249 N.J. Super. 498 (1991)
592 A.2d 653
LIVINGSTON BOARD OF EDUCATION, PLAINTIFF-APPELLANT,
v.
UNITED STATES GYPSUM COMPANY, ELSASSER & MILLER, A.A. LAFOUNTAIN, INC., JOHN DOE A AND JOHN DOE B, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1991.
Decided July 18, 1991.
Before Judges KING, LONG and R.S. COHEN.
*499 James S. Rothschild and Charles E. Reuther argued the cause for appellant (Riker, Danzig, Scherer, Hyland & Perretti, attorneys, James S. Rothschild of counsel, James S. Rothschild, Charles E. Reuther and Beatrix W. Shear on the brief).
Kell M. Damsgaard, pro hac vice, argued the cause for respondent United States Gypsum Company (Robinson, St. John & Wayne, and Morgan, Lewis & Bockius, attorneys, Keven G. Blessing and Kell M. Damsgaard on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Plaintiff Livingston Board of Education says that it discovered in 1983 that ceilings in its Heritage School contained asbestos fibers. The Board had the Heritage School built in the mid-1960s. The architect, a predecessor of defendant Elsasser & Miller, specified the use of a ceiling product called Audicote, which was made by defendant United States Gypsum Company. It was installed by the general contractor, defendant A.A. LaFountain, or its subcontractor. After it was told in 1983 that Audicote contained asbestos, the Board contracted to have the ceilings removed. It then sued U.S. Gypsum, the architect, and the general contractor (and several John Does) for damages.
The Board's complaint contended that U.S. Gypsum was liable for its damages on the following bases: (1) strict tort liability for a defective product; (2) strict tort liability for failure to warn; (3) breach of express and implied warranty; (4) negligence; (5) intentional misrepresentation, and (6) negligent misrepresentation.
Some five years after the action was filed, U.S. Gypsum moved for summary judgment, arguing that all of the Board's claims were time-barred, and also that all of the Board's tort claims failed as a matter of law. The motion judge agreed that the tort claims had to be dismissed, but denied the motion addressed to the statute of limitations on the thesis that the UCC four-year statute of limitations, N.J.S.A. 12A:2-725(2), *500 applied, but that the Board was entitled to a hearing pursuant to Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973). The Board appealed, and we are required to reverse both rulings.
The judge's letter opinion dismissed the tort claims in one paragraph:
As to the motion to dismiss Counts I, II, IV, V and VI of the Complaint same is granted. A commercial buyer such as plaintiff herein cannot recover damages for economic loss resulting from purchase of defective goods on a negligence theory. Spring Motors Distributors, Inc. vs. Ford Motor Co., 98 N.J. 555 [489 A.2d 660 (1985)]. Plaintiff's reliance on People Exp. Airlines, Inc. vs. Consolidated Rail, 100 N.J. 246 [495 A.2d 107 (1985)] is misguided in that the relationship between the parties therein was not based upon a commercial transaction or purchase of goods.
In Spring Motors Distrib., Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985), the Supreme Court ruled that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier for breach of warranty under the UCC, but not in strict liability or negligence. Spring Motors was in the business of selling and leasing trucks, and operated a fleet of 300 vehicles. It bought 14 Ford trucks with transmissions of its own choice. The transaction was heavily papered with express warranties and limitations of warranties not expressed.
The transmissions malfunctioned, and Spring Motors eventually sued, seeking damages for its expenses, loss of profits and loss of value of the trucks, on negligence, strict liability, and breach of warranty theories. Since the suit was started more than four years after delivery of the trucks, the UCC statute of limitations barred it, unless Spring Motors had viable non-UCC claims for negligence and strict liability. The Court ruled that it did not have; it was a commercial buyer and its claimed damages were for economic loss.[1]
*501 The application of the principles of Spring Motors to public bodies who sue for the cost of public building asbestos removal has been an issue in a number of recent cases around the country. Our approach to the problem may be atypical, because we are bound by Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965), which held, before adoption of the UCC in New Jersey, that a consumer who sued the manufacturer of defective carpeting had a cause of action for strict tort liability. The majority of states have rejected Santor in favor of a rule announced by Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965), that even a consumer cannot recover in strict liability for economic loss. We are nevertheless bound by Santor, which the 1985 Spring Motors opinion expressly declined to reconsider.
The boundary between strict tort liability and UCC remedies is an indistinct and troublesome one. Determining its location engages policy considerations involving risk bearing and spreading capacities, the relative bargaining power of the parties, and the unresponsiveness of commercial law doctrines to the needs of consumers who sustain physical injuries from defective goods made or distributed by remote parties. Also to be considered is judicial respect for the effort of the Legislature to adopt, in the UCC, a carefully conceived and comprehensive system of rights and remedies to govern commercial transactions. Such a system ought to be both predictable and flexible in permitting the parties to commercial transactions to choose rights, responsibilities and remedies. See Spring Motors, 98 N.J. at 570-577, 489 A.2d 660. As the Supreme Court said:
The demarcation of duties arising in tort and those arising in contract is often indistinct, but one difference appears in the interest protected under each set of principles. The purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally *502 more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement. [Id. at 579-580, 489 A.2d 660 (citation omitted)].
It is not immediately satisfying to say that decisions in the subject area are fact-sensitive, but it is accurate to say so. An examination of the parties, the transaction, and the claimed losses is necessary before the buyer or the transaction can be labeled commercial, or the losses can be labeled economic. The constellation of facts involved here is particularly difficult because the Board is neither a business nor a homeowner, its use of Audicote was neither in the furtherance of its own money-making schemes or in a personal setting, and its risk-bearing capacity is dependent on the taxpayers. Furthermore, the Board's damages are neither loss of the benefit of the bargain nor lost profits, the typical losses labeled by Spring Motors as economic. Id. at 566, 489 A.2d 660. On the other hand, the Board's damages do not involve actual personal injury or physical damage to other property, the typical sources of damages recovered through imposition of tort liability. But they do involve expenses incurred by the Board in an effort to reduce the danger of severe personal injury to those in the school building resulting from exposure to airborne asbestos fibers, and the damage to the building consequent on the removal process.
New Jersey authorities subsequent to Spring Motors give little guidance. In Perth Amboy Iron Works, Inc. v. American Home Assurance Co., 226 N.J. Super. 200, 543 A.2d 1020 (App.Div. 1988), aff'd o.b., 118 N.J. 249, 571 A.2d 294 (1990), and Unifoil Corp. v. CNA Ins. Co., 218 N.J. Super. 461, 528 A.2d 47 (App.Div. 1987), we dealt with warranty and other claims for economic loss, but did not reject strict tort liability in cases like the present one. At best, those cases dealt with situations in which plaintiffs alleged that defective goods did not perform their intended function and thus deprived plaintiffs of the benefit of their bargains. Here, Audicote performed its intended function admirably. The problem was that it created a *503 danger to life and health which the parties did not contemplate or bargain over. Like Perth Amboy and Unifoil are: In re Merritt Logan, Inc., 901 F.2d 349, 361-363 (3d Cir.1990) (defective refrigeration system causing damage to food stocks); Henry Heide, Inc. v. WRH Products Co., 766 F.2d 105, 107-109 (3d Cir.1985) (defective plastic trays causing economic loss to candy manufacturer); Damin Aviation Corp. v. Sikorsky Aircraft, 705 F. Supp. 170, 175-177 (S.D.N.Y.) (New Jersey law; action in tort for lost profits resulting from defective helicopter's crash dismissed), aff'd, 880 F.2d 1318 (2d Cir.1989); Unifoil Corp. v. Cheque Printers & Encoders Ltd., 622 F. Supp. 268, 269-270 (D.N.J. 1985) (defective "foilboard" rendered lottery tickets unusable); cf. Werner & Pfleiderer Corp. v. Gary Chem. Corp., 697 F. Supp. 808, 814 (D.N.J. 1988) (economic loss only; repair and replacement warranty between commercial parties "virtually identical" to that in Spring Motors).
There have been a number of recent cases in other jurisdictions which have considered the issues raised by U.S. Gypsum here, and have rejected the contention that a public entity owning a public building has no tort cause of action against the manufacturer of building materials containing asbestos fibers. See City of Greenville v. W.R. Grace & Co., 827 F.2d 975 (4th Cir.1987); Drayton Public School Dist. No. 19 v. W.R. Grace & Co., 728 F. Supp. 1410 (D.N.D. 1989); Hebron Public School Dist. v. United States Gypsum Co., 690 F. Supp. 866 (D.N.D. 1988); City of Manchester v. National Gypsum Co., 637 F. Supp. 646 (D.R.I. 1986); Town of Hooksett School Dist. v. W.R. Grace & Co., 617 F. Supp. 126 (D.N.H. 1984); County of Johnson, Tenn. v. United States Gypsum Co., 580 F. Supp. 284 (E.D.Tenn. 1984), vacated in part on other grounds, 664 F. Supp. 1127 (1985); Board of Ed. of City of Chicago v. A.C. & S., Inc., 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989); School Dist. of City of Independence, Mo., v. United States Gypsum Co., 750 S.W.2d 442 (Mo. Ct. App. 1988); City of New York v. Keene Corp., 132 Misc.2d 745, 505 N.Y.S.2d 782 (Sup.Ct. 1986), aff'd, 129 A.D.2d 1019, 513 N.Y.S.2d 1004 (1987); *504 Kershaw Cty. Bd. of Ed. v. United States Gypsum Co., 396 S.E.2d 369 (S.C. 1990).[2]
There are some unreported decisions barring such suits, but others permitting them. We are persuaded by the reasoning of the opinions in the cited cases that a public school district seeking recovery for costs for asbestos removal has a tort cause of action against remote suppliers and manufacturers.[3] A combination of the facts (1) that the building owner is a public entity and not a business enterprise seeking lost profits, (2) that the product defect was not its failure to perform the function for which it was bargained for and purchased, but rather its capacity to expose building users to an unforeseen but potentially grave personal safety risk, and (3) that the losses alleged in such cases frequently involve harm to the property beyond the offending product itself, dictates that the Board's claims not be restricted to those recognized by the UCC for commercial buyers, but should extend to strict tort liability. We do not say that any one of those factors is sufficient, but together they require that result. In particular, we do not rule whether there is independent significance in the difference between public entity ownership and commercial profit-oriented ownership of the building.
The other ruling of the Law Division was the rejection of a claim by the Board that it is immune from the operation of the statute of limitations. The Board invokes the ancient doctrine of nullum tempus occurrit regi, or time does not run against *505 the sovereign. The doctrine preserves the public from injury and loss by the failure of public officers to make timely claims on the public's behalf. Only statutes of limitation mentioning the government expressly or by necessary implication will abrogate the doctrine. See Guaranty Trust Co. of N.Y. v. United States, 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224, 1228 (1938).
School districts have received different treatment in different jurisdictions. See 51 Am.Jur.2d Limitations of Actions § 421 (1970); Annotation, Statute of Limitations as applicable to actions by or against school districts, 98 A.L.R. 1221 (1935). In New Jersey, the answer is clear. In New Jersey, public education is the constitutional obligation of the Legislature. N.J. Const. of 1947, art. VIII, § 4, para. 1. The Legislature has chosen to create school districts to fulfill what is clearly a state-wide responsibility of State government. Although public schools are supported locally, as well as by the State, and although school board members are chosen locally, it is beyond doubt that school districts are state agencies fulfilling a state purpose. See Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ., 79 N.J. 574, 582, 401 A.2d 681 (1979); Board of Ed. of Tp. of East Brunswick v. Township Coun. of Tp. of East Brunswick, 48 N.J. 94, 223 A.2d 481 (1966). There also is no doubt that in constructing and maintaining public schools, a school district is acting in a governmental and not a proprietary capacity. In those circumstances, the application of the nullus tempus doctrine to this case is required by New Jersey Educ. Facilities Auth. v. Conditioning Co., 237 N.J. Super. 310, 567 A.2d 1013 (App.Div. 1989), certif. granted, 121 N.J. 629, 583 A.2d 325 (1990).
It may seem odd to give a public entity an unlimited time to bring a tort claim, while barring a tort claim against the entity if the claimant neglects to give notice within 90 days of its accrual. N.J.S.A. 59:8-8. As an immediate appellate court, we are not free to consider correcting the imbalance while the issue *506 is pending before the Supreme Court in the case cited just above. Cf. Patterson v. Monmouth Reg. High School, 222 N.J. Super. 448, 537 A.2d 696 (App.Div. 1987), certif. denied, 110 N.J. 183, 540 A.2d 180 (1988).
Reversed, and remanded for proceedings not inconsistent herewith.
NOTES
[1] An interesting discussion of Spring Motors may be found in Brown and Feinman, Economic Loss, Commercial Practices, and Legal Process: Spring Motors Distributors, Inc. v. Ford Motor Co., 22 Rutgers Law Journal 301 (1991).
[2] We need not decide whether plaintiff's misrepresentation and failure-to-warn counts should survive, even if defendant's argument were sound that plaintiff should be restricted generally to UCC causes of action.
[3] We are aware of Cinnaminson Tp. Bd. of Educ. v. United States Gypsum Co., 552 F. Supp. 855 (D.N.J. 1982), where Judge Anne E. Thompson ruled essentially as we do today, applying New Jersey law before Spring Motors. She reconsidered on defendant's motion after Spring Motors, and reached the same conclusion. Judge Thompson's oral opinion was transcribed but not reported. No. 80-1842 (D.N.J. June 25, 1985).