**Howard EASLING, et al., Plaintiffs,**

v.

**GLEN-GERY CORPORATION, Defendant.**

Civ. No. 92-950(JBS).

United States District Court,
D. New Jersey.

July 21, 1992.

Frank D. Allen, William J. O'Kane, Jr., Archer & Greiner, Haddonfield, N.J., for plaintiffs.

Warren W. Faulk, Stephen J. DeFeo, Brown & Connery, Westmont, N.J., for defendant.

## OPINION

SIMANDLE, District Judge:

Currently before the court is defendant's motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the first count of plaintiffs' complaint. For the following reasons, the motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about August, 1971, plaintiffs, Drs. Howard and Vera Easling, purchased the Pennypoint Park Apartments ("Pennypoint"). Plaintiff's Complaint at ¶ 2. Pennypoint had recently been constructed in Pleasantville, New Jersey by Bacharach Village, Inc., a non-party to this action. *Id.* Bacharach purchased at least some of the bricks used in the various buildings from defendant Glen–Gery Corporation ("Glen–Gery"), a Delaware corporation doing business in Reading, Pennsylvania. *Id.* at ¶ 3.

On or about April, 1991, plaintiffs noticed that the bricks in the exterior walls of the apartment buildings had begun to crumble. *Id.* at ¶ 4. This deterioration allegedly continues into the present "in a manner that seems to be accelerating, with substantial pieces of brick detaching from the walls." *Id.* at ¶ 5. The complaint alleges that the deteriorating bricks "have caused substantial damage to the apartment buildings and present a hazard to the safety of residents thereof." *Id.* at ¶ 6. The complaint does not allege that the bricks have tumbled onto or otherwise injured persons or property outside of the building. At oral argument, counsel for plaintiffs indicated that the deterioration of the bricks may have led to rain damage to studs in the walls of the buildings.

With the belief that the value of their investment was literally crumbling before their eyes, plaintiffs instituted the present

action on January 24, 1992, in the Superior Court of New Jersey. On March 4, 1992, the defendant Glen–Gery removed the action to this court pursuant to 28 U.S.C. §§ 1441 and 1446, as the dispute is between citizens of different states and the amount in controversy exceeds $50,000.00.

Plaintiffs' complaint attempts to set forth two separate causes of action. The first count asserts that defendant's bricks were not reasonably fit, suitable or safe for their intended purpose, and that defendant is therefore strictly liable in tort for plaintiffs' damages. Plaintiffs' second count asserts that defendant's alleged misconduct of providing unsatisfactory bricks constitutes a breach of express or implied warranties of merchantability and future performance.

This matter comes before the court upon defendant's motion to dismiss the first count of the complaint. For the following reasons, the motion will be granted.

## II. DISCUSSION

█ When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the reviewing court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir.1980), *cert. denied, Mark–Garner Associates, Inc. v. Bensalem Township*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (stating that allegations of a complaint should be favorably construed for the pleader). A court may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

█ It is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir.1977). " 'Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 150, n. 3, 104 S.Ct. 1723, 1725, n. 3, 80 L.Ed.2d 196 (1984), (*quoting Conley*, 355 U.S. at 47, 78 S.Ct. at 103).

### A. Choice of Law

Plaintiff argues that New Jersey law applies to the instant motion. Defendant states that while it does not adopt plaintiffs' conflict of law analysis, it will "assume the applicability of New Jersey law for purposes of this motion." Defendant's Reply Brief at 3, fn. 1. Defendant reiterated this position at oral argument. Accordingly, the parties agree that New Jersey law governs the instant motion.

### B. The Applicability of Strict Liability

As set forth above, the instant complaint does not allege that defendant's bricks have caused any personal injuries to passersby or residents. Plaintiff thus seeks to recover for the economic loss sustained to this commercial property of which the bricks are components as a result of the allegedly defective bricks.

█ Under New Jersey law, a commercial purchaser who suffers only economic loss must look to the Uniform Commercial Code rather than tort law as the basis for its recovery. *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 561, 489 A.2d 660 (1985). In *Spring Motors*, the plaintiff truck lessor sought to hold the defendant truck manufacturer strictly liable in tort for providing defective transmissions which repeatedly broke down and ultimately required replacement.

The New Jersey Supreme Court upheld the trial court's decision granting summary judgment on the strict liability count by emphasizing the importance of the Uniform Commercial Code ("U.C.C."). The court noted, "[b]y enacting the U.C.C., the Legis-

lature adopted a carefully conceived system of rights and remedies to govern commercial transactions. Allowing Spring Motors to recover from Ford under tort principles would dislocate major provisions of the Code." *Id.* at 577, 489 A.2d 660.

The court also emphasized the origins of strict liability law as a means of protecting uninformed consumers who purchased defective products and suffered personal injuries as a result of their use. Strict liability law recognizes that the manufacturer is in the best position to eliminate the risks to the consumer and allocate the costs accordingly. *Id.* at 567, 489 A.2d 660. The *Spring Motors* court recognized, however, that "[t]he considerations that give rise to strict liability do not obtain between commercial parties with comparable bargaining power." *Id.* at 576, 489 A.2d 660. Thus, New Jersey refuses to provide the special protection of strict liability tort law to commercial entities, who are presumed to enter into transactions with an understanding of the risks involved and the ability to bargain for their allocation.

■ In contrast to commercial buyers, New Jersey does permit consumer plaintiffs to assert strict liability causes of action when they suffer only economic loss as a result of a defective product. *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 63, 207 A.2d 305 (1965) (holding that consumer could recover the difference between the price paid for and the value of defective carpet in strict liability, due to manufacturer's superior ability to allocate the risk). In *Spring Motors*, the Supreme Court of New Jersey catalogued the voluminous criticism of the *Santor* decision, but stopped short of reconsidering the decision, as it was unnecessary in the context of the case before it which involved a dispute between two commercial entities. *Spring Motors*, 98 N.J. at 573–575, 489 A.2d 660.

■ In their brief, plaintiffs seek the shelter of *Santor*'s safe haven by arguing that they are not commercial purchasers, and were instead nothing more than consumers. Plaintiffs' Brief at 10–14. The essential basis of this argument seems to be that since plaintiffs are merely individuals, and not a corporation, and purchased this apartment complex for an investment, this court should conclude that they are merely consumers. *Id.* at 12. At oral argument, counsel for plaintiffs argued that this apartment complex represented the plaintiffs' first foray into the world of commercial realty, and that they were accordingly too unsophisticated to know anything about the soundness of the bricks. Plaintiffs also contend that they do not satisfy the U.C.C.'s definition of "merchants," and are therefore entitled to the protection accorded consumer buyers under *Santor*. Plaintiff's Brief at 13.

While it may be true that plaintiffs can not be characterized as merchants under the U.C.C., the plaintiffs have cited this court to no authority which requires the court to label them merchants under the U.C.C. before labeling them commercial purchasers under the logic of *Spring Motors*. *Spring Motors* itself makes no reference to the U.C.C. definition of merchants.

The complaint indicates that Pennypoint consists of "numerous apartment buildings." Complaint at ¶ 1. At oral argument the parties agreed that the complex consists of nineteen (19) buildings. Although plaintiffs are doctors, and presumably not primarily engaged as land developers or commercial property owners, the purchase of an apartment complex composed of nineteen apartment buildings scarcely could be characterized as anything other than a major commercial transaction, since it is apparent that plaintiffs purchased the property as an investment. (There has been no contention that plaintiffs purchased the property as a residence for themselves or their family members.).

The New Jersey courts have labeled apartment complexes commercial properties for purposes of the imposition of tort liabilities. *Stewart v. 104 Wallace Street, Inc.*, 87 N.J. 146, 160 n. 7, 432 A.2d 881 (1981); *Hambright v. Yglesias*, 200 N.J.Super. 392, 395, 491 A.2d 768 (App.Div.1985). The court can not discern why the New Jersey courts would label the plaintiffs anything other than commercial actors in the instant circumstances.

In opposition to the instant motion, plaintiffs cite *Livingston Bd. of Educ. v. U.S. Gypsum Co.,* 249 N.J.Super. 498, 502, 592 A.2d 653 (App.Div.1991), where the court stated "[i]t is not immediately satisfying to say that decisions in the subject are fact-sensitive, but it is accurate to say so. An examination of the parties, the transaction, and the claimed losses is necessary before the buyer or the transaction can be labeled commercial, or the losses can be labeled economic." *Id.* at 502, 592 A.2d 653. In *Livingston,* the appellate division held that a school board could pursue a strict liability cause of action against an asbestos manufacturer for the cost of removing asbestos from a school under the *Santor* doctrine. The court explicitly emphasized three factors which required it to conclude as it did:

> (1) that the building owner is a public entity and not a business enterprise seeking lost profits, (2) that the product defect was not its failure to perform the function for which it was bargained for and purchased, but rather its capacity to expose building users to an unforeseen but potentially grave personal safety risk, and (3) that the losses alleged in such cases frequently involve harm to the property beyond the offending product itself ...

*Id.* at 504, 592 A.2d 653.

In contrast to the plaintiff in *Livingston,* the plaintiffs in the instant matter are business people seeking lost profits. Secondly, the product defect alleged in this matter is exactly that the bricks have failed to perform the function for which they were bargained for (although, as set forth *infra,* the plaintiffs did not bargain for a load of bricks but instead bargained for an apartment complex). Finally, the losses alleged in this case do not involve harm to the property beyond the offending product itself, a matter which will be discussed in greater detail *infra* at 590–591.

As *Spring Motors* emphasized that "perfect parity is not necessary to a determination that parties have substantially equal bargaining positions," *Spring Motors,* 98 N.J. at 576, 489 A.2d 660, there is no reason to conclude that the facts that plaintiffs were mere individuals and that defendant is a corporation have any special relevance to the instant matter. *See, e.g., Moreira Constr. Co. Inc. v. Moretrench Corp.,* 97 N.J.Super. 391, 394–95, 235 A.2d 211 (App.Div.1967), *aff'd en banc,* 51 N.J. 405, 241 A.2d 236 (1968) (refusing to apply rule of *Santor* to suit between corporations even though plaintiff was a small company and defendant was the world's largest well point company). It is a fortuity of no present consequence that the business investors in this major transaction happened to be individuals rather than a corporation. Even if plaintiffs could prove that they were unsophisticated purchasers of an apartment complex, the court would be required to dismiss their strict liability complaint, as they entered into a large commercial transaction, were not forced to purchase the building, and could have bargained for any warranties or assurances which they deemed necessary. The fact that plaintiffs purchased this large apartment complex demonstrates that plaintiffs clearly had the financial power to stand on substantially equal footing with the defendant. The purchase of a large apartment complex is undeniably a commercial transaction, and bears no similarity to the purchase in *Santor* of a rug by an individual consumer. Thus, *Santor's* logic should not apply to the instant dispute.

Defendant Glen–Gery sold the bricks in issue to a contractor, who made them a part of the complex which the contractor sold the plaintiff. The defendant's liability to a commercial plaintiff should not be predicated upon the commercial plaintiff's alleged lack of sophistication, as it would then be impossible for a commercial party such as the defendant to protect itself from future exposure to litigation in situations such as this. Even an unsophisticated purchaser of an apartment complex would know that there is a possibility that the construction or materials are unsound, and this "risk that a product will malfunction or be destroyed by an internal defect ... is both utterly foreseeable and within the scope of the contract." *Public Service Enterprise Group, Incorporated v. Philadel-*

*phia Electric Company,* 722 F.Supp. 184, 202 (D.N.J.1989).

The only exception to the *Spring Motors* rule arises in situations involving property damage arising from accidents. *Spring Motors,* 98 N.J. at 578, 489 A.2d 660. This exception is exemplified by *Consumers Power Co. v. Curtiss–Wright Corp.,* 780 F.2d 1093 (3d Cir.1986). In *Consumers Power,* the defendant negligently repaired an engine, and the engine ultimately exploded. Although the explosion caused no personal injury, the Third Circuit nevertheless permitted plaintiff to seek recovery under a strict liability theory, and stated that "[c]ommercial plaintiffs *can* recover in strict liability or negligence for accidental property damage." *Id.* at 1098 (emphasis in original). The court emphasized that the defendant's negligence "caused a sudden, violent and calamitous accident which posed a serious threat to persons and property. The damage caused by the explosion is property damage, not economic loss." *Id.* at 1099.

The instant matter does not present such a sudden, violent or accidental turn of events. It instead presents the question of the appropriate source of remedy when the defendant's conduct causes a progressively worsening condition, and is in that manner more akin to *Henry Heide, Inc. v. WRH Products Co., Inc.,* 766 F.2d 105 (3d Cir. 1985), in which the Third Circuit held that a party who provided defective trays which gradually warped through plaintiff's use could not be held strictly liable under the reasoning of *Spring Motors.*

Under the holding of *Spring Motors,* then, the first count of plaintiff's complaint seeking to hold defendant liable under a strict products liability theory must be dismissed, as it is apparent that plaintiffs could prove no set of facts which would entitle them to relief.

### C. *Plaintiff's Products Liability Act Argument*

■ Plaintiffs also assert that the Products Liability Act of New Jersey, *N.J.S.A.* 2A:58C–1, *et seq.,* provides a basis for recovery in the instant matter. The Legisla-

ture enacted the statute "to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products." *N.J.S.A.* 2A:58C–1(a). The Act defines "harm" as

> (a) physical damage to property, *other than to the product itself;* (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

*N.J.S.A.* 2A:58C–1(b)(2) (emphasis supplied).

Plaintiffs contend that they have satisfied the Act's requirements of alleging harm to property "other than the product itself," because "[a]t a minimum, Glen-Gery's defective bricks have caused damage to the mortar surrounding the bricks. Moreover, Plaintiffs' expert has not yet examined the buildings to determine the extent of damage the defective bricks have caused to other parts of the building." Plaintiffs' Brief at 9.

The question thus becomes what "product" the plaintiffs purchased for the purposes of resolving the instant motion. The plaintiffs purchased a completed apartment complex. They did not purchase a load of bricks from the defendant. The Third Circuit has held that in determining whether a product has injured only itself in a products liability action in which a component part manufactured by a defendant causes injury to the product of which it is a part, the court must look not to the product manufactured by the defendant, but to the product purchased by the plaintiff. *King v. Hilton–Davis,* 855 F.2d 1047, 1051 (3d Cir. 1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989). Thus, even if the court assumes that plaintiff can prove that the allegedly leaking walls have led to damage to the studs or interiors of the building, the plaintiffs can not prove that the product that they purchased is anything other than the apartment complex itself, and the Products Liability Act thus

fails to provide them with a basis for seeking tort relief.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the first count of plaintiffs' complaint shall be granted. An appropriate order will be entered.