840 A.2d 291 (2003)
366 N.J. Super. 49
Barry FLOWERS and Lois Flowers, his wife, Plaintiffs
v.
VIKING YACHT COMPANY, Staten Island Boat Sales, Inc., Frank Bongiorno, and Bluewater Yacht Sales, Inc., Defendants.
Superior Court of New Jersey, Law Division-Civil Part.
August 13, 2003.
*292 Edward A. Genz, for plaintiff (Wilbert, Montenegro & Thompson, P.C.).
Marco P. DiFlorio, Maple Shade, for defendant Viking Yacht Co. (Rawle & Henderson, LLP, Marlton).
William E. Haddix, Haddon Heights, for defendants Frank Bongiorno and Staten Island Boat Sales, Inc. (Law Offices of Thomas Dempster, III, Mount Laurel).
Gerard M. Green, for defendant Bluewater Yacht Sales, Inc. (Law Offices of Charles P. Hopkins, II, Shrewsbury).
LOCASCIO, J.S.C.
The issue, presented by the within R. 4:6-2 motion to dismiss, is whether plaintiff may recover, in tort, for the diminution in value of his boat, lost business income, and counsel fees, associated with the defense of criminal charges brought against plaintiff, as a result of a boating accident in which three people died and another was seriously injured. This court, for the following reasons, answers this question in the negative.
This case arises out of a highly publicized October 12, 2000 boating accident between plaintiffs' PERMISSION VI, a sixty foot Viking sports yacht, designed, manufactured and distributed by defendants, and the ROSIE TOO, a twenty-one foot open fishing boat. Immediately before the collision occurred, while at the helm, plaintiff Barry Flowers diverted his attention to look for a computer chip, leaving his wife, plaintiff Lois Flowers, to act as look-out. Neither plaintiff noticed the Rosie Too until the Permission VI collided with the smaller vessel, crushing and tearing the fiberglass hull and cabin from stern to bow. As a result of the collision, three of the four occupants of the ROSIE TOO were killed and the fourth was seriously injured.
Thereafter, plaintiff was civilly sued and criminally prosecuted for his role in this incident. The civil suit, filed in the N.J. Federal District Court, was settled prior to the filing of the within action. Defendants' motion to dismiss the within complaint, based upon the entire controversy doctrine, was denied by this court on April 25, 2003.
On August 8, 2002, following a hung jury on the criminal charges, Barry Flowers pleaded guilty to death by vessel (a second degree offense) and assault by vessel. The factual basis for his guilty plea included the following colloquy:
Q. Mr. Flowers, on October 12, 2000, in the Borough of Beach Haven, County of Ocean were you at the helm operating your vessel, the Permission VI, sir?
A. I was, sir.
Q. And while you were at the helm, did you divert your attention from your lookout obligations and duties by looking for a chip for a substantial period of time, sir?
A. I did.
Q. And do you recognize, sir, by doing that conduct you consciously disregarded a substantial risk?
A. I do.
Q. And are you aware, sir, that as a result of the conduct that you have just acknowledged that caused the deaths of Messrs. Decker, Shiko and Laterza, as well as creating serious bodily injury to Charles Hartley, sir?
A. I do.
*293 Q. And is there anything further that you wish to indicate relating to this matter, sir?
A. Yes. I deeply regret the loss of all the families. And I hope that by this plea that we can put closure to it all and bring some comfort in our lives.
On September 27, 2002, Barry Flowers was sentenced. Because, pursuant to his plea agreement, the second degree offense, for sentencing purposes, was treated as a third degree offense, he was sentenced to 5 years probation. Conditions of probation included Mr. Flowers serving 85% of 180 days in jail and not operating a boat in any jurisdiction.
Plaintiffs brought the within action, on several legal theories, against a number of entities in the chain of the manufacture and distribution of the Permission VI. Plaintiffs, based upon defendants' alleged failure to properly design, manufacture and sell the Permission VI with adequate visibility of vessels in its path, have set forth claims sounding in both tort and contract. Specifically, plaintiffs have alleged the following claims against defendants:
1. negligence and strict liability claims for the design, manufacture, installation, alteration, assembly, sale, distribution, and marketing of the Permission VI (N.J.S.A. 2A:58C-1 et. seq.);
2. breach of express warranty (N.J.S.A. 12A:2-313);
3. breach of implied warranty of merchantability (N.J.S.A. 12A:2-314); and
4. breach of implied warranty of fitness for a particular purpose (N.J.S.A. 12A:2-315).
Plaintiffs seek to recover damages for:
1. emotional distress;
2. loss of consortium;
3. diminution in the value of the Permission VI, due to the notoriety surrounding this highly publicized incident;
4. income lost from plaintiff's business, due to his having to deal with the criminal charges filed against him;
5. reimbursement of counsel fees and costs, including expert and investigative costs, resulting from defending the criminal charges against him; and
6. defamation of reputation.
The claim for defamation of reputation was dismissed, with consent of plaintiff; the claims for emotional distress and loss of consortium were dismissed, by this court, on July 18, 2003 pursuant to Portee v. Jaffee, 84 N.J. 88, 98, 417 A.2d 521, 526 (1980) and Weir v. Market Transition Facility, 318 N.J.Super. 436, 444, 723 A.2d 1231, 1235 (App.Div.1999) respectively. The remaining issue, therefore, is whether plaintiffs may pursue, in an attempt to recover the diminution in value of the Permission VI, plaintiffs' lost income, and counsel fees incurred in the defense of the criminal charges against him, theories grounded in both tort and the Uniform Commercial Code.
A discussion of economic losses arising from this boating incident must commence with the seminal case of Alloway v. General Marine Ind., 149 N.J. 620, 695 A.2d 264 (1997), where the issue, similar to the issue before this court, was whether plaintiffs could rely upon theories of strict liability and negligence to recover damages for economic losses resulting from a defect that caused a boat to sink while docked at a marina, there being no other property damage nor any personal injuries. The trial court granted defendant's motion to dismiss the tort claims, relying upon *294 Spring Motors Distributors, Inc., v. Ford Motor Co., 98 N.J. 555, 561, 489 A.2d 660, 663 (1985), which held that "... a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence(,)" and D'Angelo v. Miller Yacht Sales, 261 N.J.Super. 683, 688, 619 A.2d 689, 691 (App.Div.1993), which held that the "exclusive remedy" of a consumer, seeking economic damages resulting from a boat that was purchased used, rather than new as represented by defendant, was the remedy provided by the Uniform Commercial Code and not the tort theories of negligence and strict liability. More specifically, the Court, in Spring Motors, supra, 98 N.J. at 581, 489 A.2d at 673 explained:
Nonetheless, the weight of authority supports the proposition that economic expectations that are protected by the U.C.C. are not entitled to supplemental protection by negligence principles.... Stated otherwise, the U.C.C. "is generally regarded as the exclusive source for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself." citing Prosser & Keeton, Handbook of the Law of Torts, § 95A at 680 (5th ed. 1984).
The Appellate Division, in Alloway, reversed the lower court's ruling, relying on Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965), which recognized that a consumer could maintain a strict liability claim against a manufacturer for loss of value of a defective carpet. The Appellate Division concluded that "[s]ince Santor has not been overruled, we must follow it." Alloway v. General Marine Ind., 288 N.J.Super. 479, 488, 672 A.2d 1177, 1181 (App.Div.1996).
However, one year after Spring Motors, the United States Supreme Court had reviewed the roles of tort and contract law, in a case involving economic loss caused by the defective design and manufacture of turbines in supertankers, recognizing the issue to be "... whether a cause of action in tort is stated when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 859, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The Court then held:
... to the extent that products actions are based on negligence, they are grounded in principles already incorporated into the general maritime law .... Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain-traditionally the core concern of contract law. Id. at 866, 870, 106 S.Ct. 2295 (emphasis added).
Relying on East River, the N.J. Supreme Court in Alloway, supra, 149 N.J. at 64243, 695 A.2d 264, 275, reversed the Appellate Division and held that a consumer may not bring an action in negligence and strict liability for economic loss arising from the purchase of a defective product, but must rely on breach of warranty remedies provided by the Uniform Commercial Code.
Plaintiffs' reliance, in the instant matter, upon Livingston Bd. of Educ. v. U.S. Gypsum Co., 249 N.J.Super. 498, 592 A.2d 653 (App.Div.1991), and the Restatement (third) of Torts: Products Liability § 21, is *295 misplaced. In Livingston, after plaintiff Board of Education discovered that ceilings in its Heritage School contained asbestos fibers, it "... contracted to have the ceilings removed. It then sued U.S. Gypsum, the architect and the general contractor... for damages." Id. at 499, 592 A.2d at 653. The court, in holding that the public school district had a tort cause of action against remote suppliers and manufacturers, relied upon a combination of the following factors:
... (1) that the building owner is a public entity and not a business enterprise seeking lost profits, (2) that the product defect was not its failure to perform the function for which it was bargained for and purchased, but rather its capacity to expose building users to an unforeseen but potentially grave personal safety risk, and (3) that the losses alleged in such cases frequently involve harm to the property beyond the offending product itself.... Id. at 504, 592 A.2d at 656.
Considering each of these factors, seriatim, demonstrates that Livingston is inapplicable to the within matter.
(1) In Livingston, plaintiff was a public entity; Barry Flowers is not a public entity, he is the owner of a business enterprise seeking lost profits.
(2) In Livingston, the risk of harm was to the children using the product the asbestos lined school; in the within matter the risk of harm was not to the user of the boat (Flowers) but to third parties (the decedents).
(3) Although asbestos has frequently caused harm in the past, there is no evidence that a Viking sports yacht's alleged inadequate vessel visibility design has ever before caused a boating accident.
The Restatement (Third) of Torts: Products Liability § 21 provides the following illustration:
A machine that is used to anesthetize dental patients was delivered to Dr. Smith with the labels for nitrous oxide and oxygen reversed. Dr. Smith, believing she was administering oxygen to a patient, mistakenly administered nitrous oxide, which caused the patient to die. Due to the adverse publicity arising from accurate media reporting of the case, Dr. Smith suffered a sharp drop in her practice and substantial economic loss. Dr. Smith's interest in her professional reputation is an interest protected by tort law against economic loss arising from harm to a patient in her care. Thus, Dr. Smith's damages for economic loss are recoverable in tort from the seller of the machine under Subsection (b).
In the above illustration, the patient's death, and Dr. Smith's resulting economic loss, were caused solely by the seller's negligence; Dr. Smith was free from any wrongdoing. In the instant matter, although plaintiffs allege that defendants put the Viking sports yacht into the stream of commerce with inadequate vessel visibility, Mr. Flowers admitted to being an independent and intervening cause of the accident, i.e. that his "conduct... caused the deaths of Messrs. Decker, Shiko and Laterza, as well as creating serious bodily injury to Charles Hartley."
In Livingston, and the aforesaid Restatement illustration, there were no intervening causes, especially none that rose to the level of criminal culpability of plaintiff. The harm in Livingston came solely from the manufacturer of the asbestos; the harm in the Restatement illustration came solely from the seller of the anesthesia machine; here the harm came from Mr. Flowers' negligent and criminal conduct.
*296 Plaintiffs' claims for the diminution in value of the Permission VI, and for loss of profits, are economic losses as defined in Alloway, supra, 149 N.J. at 627, 629, 695 A.2d at 268-69:
... economic loss encompasses actions for the recovery of damages for costs of repair, replacement of defective goods, inadequate value, and consequential loss of profits.... The U.C.C. represents the Legislature's attempt to strike the proper balance in the allocation of the risk of loss between manufacturers and purchasers for economic loss arising from injury to a defective product. (emphasis added).
Plaintiff, in the instant matter, like plaintiff in Alloway, is not asserting a personal injury claim nor a claim for harm to a tangible item other than the defective product, i.e. the Permission VI. Thus even though plaintiffs' damages occurred "through an abrupt, accident-like event, the resulting loss due to ... decreased value and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain-traditionally the core concern of contract law." East River SS. Corp., v. Transamerica Delaval, supra, 476 U.S. at 870, 106 S.Ct. 2295. Therefore plaintiffs may not, as a matter of law, pursue their aforesaid economic claims on a tort theory; their exclusive remedy is under the Uniform Commercial Code.
Plaintiff's claim for attorney's fees and expenses, related to his criminal prosecution, are not recoverable in the within matter. In some limited circumstances counsel fees may be recoverable as an element of damages when tortious conduct, or a breach of contract, requires the victim to defend or prosecute a case against a third party. Lovett v. The Estate of Lovett, 250 N.J.Super. 79, 593 A.2d 382 (Ch.Div.1991). However, such fees are only recoverable where the third party litigation is the "`natural and necessary' consequence of the defendant's wrongdoing. Remote, uncertain and contingent consequences do not afford a basis for recovery.... Nor will such fees be recoverable if they are incurred in order to establish the guilt of the wrongdoer." Id. at 94, 593 A.2d at 389 (citing Dorofee v. Pennsauken Tp. Planning Bd., 187 N.J.Super. 141, 453 A.2d 1341 (App.Div. 1982)).
In Lovett, plaintiffs, testator's surviving children, brought a complicated legal malpractice action against the attorney who drafted a simple will, which replaced a sophisticated will, for testator, who owned several properties and businesses. The suit, seeking to invalidate the most recent will, power of attorney, and premarital agreement, also included allegations of breach of fiduciary duty, undue influence and conversion against testator's second wife, and sought to set aside sales of real estate. Eventually, this prolonged litigation resulted in plaintiffs settling or abandoning all but the legal malpractice claim for which plaintiffs sought damages of $275,000, representing the legal fees incurred in prosecuting this complex litigation. In denying this relief, the court pointed out that "[p]laintiffs problem with this aspect of the claim is that there was no proof that these expenses were reasonably necessary. (citation omitted). The fact that the decedent's children chose to bring various claims does not prove that they were reasonably necessary to correct defendant's negligence." Id. at 93, 593 A.2d at 388. Although under certain circumstances, attorneys fees are recoverable "[f]or example, if someone's wrongdoing is the cause of litigation between the victim and third parties and that litigation was foreseeable at the time of the wrongdoing..., (r)emote, uncertain and contingent consequences do not afford a basis for recovery." Id. at 94, 593 A.2d at 389.
*297 In Bates v. Warrick, 76 N.J.L. 108, 69 A. 185 (Sup.Ct.1908), defendant negligently cut down a tree which fell against, and broke, the window of plaintiff's store. In addition to the repair costs, plaintiff sought to recover for injury to plaintiff's business because "... for a period of three days, while the damage to the premises was being repaired, the plaintiff was prevented from displaying her goods in one of her show windows." Id. at 109, 69 A. at 185. Although recognizing that plaintiff was entitled to recover. "... all damages which resulted directly and necessarily from the proximate and natural consequences of the act complained of, as distinguished from remote, uncertain, or contingent results," the court held that plaintiff's claim for these three days of inability to display her goods in a window "... was too remote, speculative, and uncertain" to be recoverable. Id. at 108-109, 69 A. at 185.
In the instant case, plaintiff was criminally prosecuted and incarcerated for his own reckless conduct which caused the accident that killed three boaters and maimed a fourth. His prosecution and conviction were neither "foreseeable at the time of the wrongdoing" Lovett, supra, 250 N.J.Super. at 94, 593 A.2d at 389, nor the natural consequence of any alleged negligence, defective design, or breach of warranty on defendants' part. As plaintiff admitted, when he pled guilty to his criminal charges, his "conduct... caused the deaths of Messrs. Decker, Shiko and Laterza, as well as creating serious bodily injury to Charles Hartley." When asked, after his aforesaid admission, whether "... there is anything further you wish to indicate relating to this matter," plaintiff did not say defendant's design, manufacture or distribution of the Permission VI in any way caused or contributed to this accident; he simply said: "I deeply regret the loss of all the families, and I hope that by this plea that we can put closure to it all and bring some comfort in our lives." As the court in Central Motor v. E.I. duPont deNemours, 251 N.J.Super. 5, 10, 596 A.2d 759, 761 (App.Div.1991) noted:
... an indemnitee who defends exclusively against the acts of the indemnitor may recoup from the indemnitor the reasonable costs of its defense. (citation omitted). The picture becomes less clear when a plaintiff alleges that a retailer or distributor entitled to indemnification for selling a defective product is also independently liable for plaintiff's damages as a result of its own conduct. The bare statement of the rule is that an indemnitee who has defended against allegations of its independent fault may not recover its costs. (citations omitted).
Therefore, plaintiff may not recover, from defendants, the costs of his criminal defense since, by his own admission, it was his own negligent conduct and active wrongdoing that led to his criminal prosecution. These damages are "too remote, speculative, and uncertain" to be recoverable. Bates v. Warrick, supra, 76 N.J.L. at 109, 69 A. at 185. In this respect, to permit plaintiff to recover his criminal defense fees and expenses would violate "... the policy of the common law that no one shall be allowed to profit by his own wrong." Neiman v. Hurff, 11 N.J. 55, 60, 93 A.2d 345, 347 (1953).
For the foregoing reasons, this court finds that
(1) plaintiffs' claims for diminution in the value in the Permission VI, and for loss of business income, are limited to the relief provided by the Uniform Commercial Code;
(2) all tort claims are dismissed with prejudice; and
(3) plaintiff's claim for reimbursement of counsel fees and costs, associated *298 with the defense of his criminal charges, is dismissed with prejudice.