UNITED STATES AVIATION UNDER-WRITERS, INC., a New York corporation, Manager, United States Aircraft Insurance Group; Compass Foods, Inc., a Delaware corporation; Jet Aviation, Inc., a Maryland corporation, Plaintiffs,

v.

DASSAULT AVIATION, a French entity; Societe d'Etudes at de Construction de Monteurs d'Aviation a/k/a Snecma d/b/a Messier–Bugatti, a French entity; Dassault Falcon Jet Corporation, a Delaware corporation; and Does 1 through 500, inclusive, Defendants.

No. 06–CV–206–J.

United States District Court, D. Wyoming.

May 11, 2007.

Frank D. Neville, Williams Porter Day & Neville, Casper, WY, Jeffrey J. Williams, Jon A. Kodani, Law Offices of Jon A. Kodani, Santa Monica, CA, for Plaintiffs.

David J. Adams, Philip M. Foss, Stephen P. Kenney, Pfeiffer & Adams, Chicago, IL, Richard A. Mincer, Robert Carl Jarosh, Hirst Applegate, Cheyenne, WY, for Defendants.

ORDER GRANTING DEFENDANT SNECMA'S MOTION TO DISMISS, ORDER GRANTING DEFENDANTS DASSAULT AVIATION AND DASSAULT FALCON JET CORP.'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ORDER GRANTING DEFENDANTS DASSAULT AVIATION AND DASSAULT FALCON JET CORP.'S MOTION TO DISMISS THE THIRD CLAIM FOR RELIEF IN PLAINTIFFS' FIRST AMENDED COMPLAINT AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THIRD CLAIM FOR DECLARATORY RELIEF

JOHNSON, District Judge.

The Motion to Dismiss filed by defendant Societe Nationale d'Etude et de Construction de Monteurs d'Aviation, SA ("SNECMA"), filed pursuant to Fed. R.Civ.P. 12(b)(6), the Motion for Partial Summary Judgment filed by Defendants Dassault Aviation and Dassault Falcon Jet Corporation, the Motion to Dismiss the Third Claim for Relief in Plaintiffs' First Amended Complaint filed by Defendants Dassault Aviation and Dassault Falcon Jet Corp., the plaintiffs' Motion for Summary Judgment on the Third Claim for Declaratory Relief, and the responses and replies of all parties one to the other in opposition and in support of the various motions have come before the Court for consideration. A hearing was held on April 13, 2007 in Cheyenne, Wyoming; counsel for the parties appeared and presented their respective arguments to the Court at the hearing. The Court, having considered the parties' written submissions and the materials offered in support of their respective positions, the arguments of counsel, the pleadings of record, the applicable law, and being fully advised, FINDS and ORDERS as follows:

## Background

Plaintiffs' claims arise out of an accident involving a Falcon 900 corporate jet that occurred on February 6, 2001 in Pinedale, Wyoming. Plaintiffs' complaint names as defendants Dassault Aviation, SNECMA d/b/a Messier–Bugatti, and Dassault Falcon Jet Corporation, and five hundred other DOE defendants. Claims asserted in the complaint are styled as product liability and negligence claims against the defendants. The complaint alleges that the "crash caused substantial damage to the Airplane." Complaint ¶ 5.1. The complaint does not allege damage to any person or other property.

The plane at issue is alleged to have been manufactured in France and sold to Plaintiff Compass Foods by defendant Dassault FalconJet corporation by a purchase agreement dated April 14, 1992. The purchase agreement included limited warranty and replacement provisions. These provisions had expired by the time of the accident. The Affidavit of Frederick Alimonti is filed in support of defendant SNECMA's motion to dismiss, which sets out the provisions of the purchase agreement's limited warranty and disclaimer. (Document 103–1.)

The disclaimer provides:

> FALCON JET CORPORATION MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY EXCLUDES THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE. ALL OTHER OBLIGATIONS OR LIABILITIES OF FALCON JET CORPORATION, INCLUDING CONSEQUENTIAL OR OTHER DAMAGES ARISING OUT OF THE SALE, USE OR OPERATION OF THE AIRCRAFT ARE EXPRESSLY EXCLUDED BY FALCON JET CORPORA-

TION AND HEREBY WAIVED BY PURCHASER. THIS DISCLAIMER IS NOT INTENDED TO LIMIT PURCHASER'S REMEDIES RELATED TO BONA FIDE CLAIMS AGAINST SELLER FOR NEGLIGENCE OR STRICT PRODUCT LIABILITY.

Document 102–1 at 65, ¶ 6.

The purchase agreement includes a choice of law provision as well at ¶ 19:

Both parties agree that this contract shall be interpreted under and performance shall be governed by the laws of the State of New Jersey, United States of America.

In 2003 a complaint was filed in the United States District Court for the District of New Jersey. The complaint named the same defendants, and related background information regarding purchase of the airplane and the crash in Pinedale, Wyoming. The First Count was a strict product liability count against all defendants; the Second Count was a negligence count against all defendants. Neither count alleged harm to persons or property other than the airplane. Plaintiffs reside in New Jersey. New Jersey is the state where the Purchase Agreement was executed and performed and also the state forum designated by the contract's choice of law clause. Defendant states that the New Jersey action was withdrawn without prejudice to re-filing.

On December 16, 2003, a Complaint and Demand for Trial by Jury was filed with the District Court for the Eastern District of Arkansas. Arkansas is a place of business of Dassault Falcon Jet. That complaint also names the same defendants as the New Jersey complaint, and describes the airplane and the crash. The First Claim for Relief is a strict product liability claim against all defendants; the Second Claim for Relief is a negligence claim against all defendants. Nothing in the complaint alleges harm to persons or property other than the plane involved in the Pinedale, Wyoming crash in 2001.

On September 28, 2005, the United States District Court for the District of Arkansas transferred the action to the United States District Court for the District of Wyoming (Document 103–1, Ex. C at 32–44); July 6, 2006 the Arkansas District Court entered its Order denying the plaintiffs' motion for reconsideration of the transfer order. (Document 103–1, Ex. D at 46–51.) The Arkansas complaint does not assert any warranty or contractual claims against any of the defendants, including SNECMA.

Following transfer to this Court, the Court permitted plaintiffs to file a First Amended Complaint. The claims asserted in the first amended complaint are as follows:

First Claim for Relief: Strict Product Liability by all plaintiffs against all defendants

Second Claim for Relief: Negligence by all plaintiffs against all defendants

Third Claim for Relief: Declaratory Relief by plaintiffs UASU and Compass Foods, Inc., only against Dassault Falcon Jet Corporation only (pursuant to 28 U.S.C. § 2201)

Fourth Claim for Relief: Breach of Written Contract by plaintiffs USAU and Compass Foods, Inc. only against Dassault Falcon Jet Corporation only

Fifth Claim for Relief: Breach of Warranties by all plaintiffs against Dassault Falcon Jet Corporation and Dassault Aviation only

Sixth Claim for Relief: Breach of the Implied Covenant of Good Faith and Fair Dealing by plaintiffs USAU and Compass Foods, Inc. only against Dassault Falcon Jet Corporation only

Seventh Claim for Relief: Intentional Interference with Performance of Con-

tract by Third Person by plaintiffs USAU and Compass Foods, Inc. only against Dassault Aviation only

Plaintiffs seek declaratory relief, general and compensatory damages, special damages including damages for out of pocket expenses, incidental and consequential damages, prejudgment interest, costs of suit and reasonable attorneys fees.

SNECMA has denied plaintiffs' allegations of the first amended complaint; asserts affirmative defenses including failure to state a claim against SNECMA; lack of personal jurisdiction over SNECMA immunity attendant to its foreign sovereign status; plaintiffs' damages were solely and proximately caused by the independent, intervening or superseding acts or omissions of other parties or persons for which SNECMA is not liable and over which it has no control; offset by the amount of other insurance plaintiffs procured or could have procured; plaintiffs damages were caused or contributed to by plaintiffs' own fault, assumption of risk, want of due care; fault, neglect and want of due care of persons or parties other than SNECMA; SNECMA is a holding company not directly engaged in any manufacturing; damages claimed by plaintiffs are limited or not recoverable under applicable law; and the economic loss doctrine bars plaintiffs' damages.

Dassault Aviation has generally denied the allegations of the first amended complaint that are directed to Dassault Aviation, which include the first (strict liability), second (negligence), fifth (breach of warranty), seventh (intentional interference with performance of contract by third person) claims for relief. Affirmative defenses include failure to state a claim, lack of personal jurisdiction, insufficiency of service of process, improper venue, comparative fault—all actors, comparative fault-plaintiffs; plaintiffs' fault bars recovery, acts or omissions by Dassault Aviation

not proximate cause of events and happenings referred to in plaintiffs' first amended complaint; intervening and superseding cause; unfortunate accident, third parties' fault was intervening proximate cause; one or more of the plaintiffs not real party in interest; fifth and seventh claims barred by statute of limitations; estoppel, waiver and/or laches; and, failure to mitigate their damages.

Dassault Falcon Jet Corporation also generally denies the allegations of the first amended complaint that are asserted against it, including the first (strict product liability), second (negligence), third (declaratory relief as to Dassault Falcon Jet Corp only), fourth (breach of written contract as to Dassault Falcon Jet Corp. only), fifth (breach of warranties against Dassault Falcon Jet Corp. and Falcon Jet.), sixth (breach of the implied covenant of good faith and fair dealing against Dassault Falcon Jet Corp. only); seventh (intentional interference with performance of contract by third person against Dassault Aviation only). Dassault Falcon Jet Corp. asserts affirmative defenses including failure to state a claim, lack of personal jurisdiction as to the third, fourth, fifth, and sixth claims; insufficiency of service of process; improper venue as to the third, fourth, fifth and sixth claims; comparative fault—all actors; comparative fault—plaintiffs; plaintiffs' fault bars recovery; proximate cause; intervening and superseding cause; unfortunate accident; intervening proximate cause or fault of third parties; one or more of plaintiffs is not real party in interest and/or lacks standing; statute of limitations bars third, fourth, fifth, and sixth claims; estoppel, waiver and laches; and finally, failure to mitigate damages.

An amended third party complaint has also been filed in the case by the Dassault defendants against Messier–Bugatti. Messier–Bugatti is alleged to have con-

tracted with Dassault Aviation to supply anti-skid brake systems and components for the Falcon 900, including the aircraft involved in this case. Count One of the third party complaint seeks indemnity of Messier–Bugatti (a d/b/a of SNECMA), in the event that the Dassault defendants are found to be liable to one or more of the plaintiffs for defects in the Messier–Bugatti anti-skid brake system. Count Two seeks contribution from Messier–Bugatti in the event that the trier of fact determines there were defects in the Messier–Bugatti antiskid brake system. Messier–Bugatti has filed a motion to dismiss the amended third party complaint. However, that motion and matters relating to the third party complaint are not yet ripe for decision and are not now before the Court for consideration. The Court also notes that there are not yet any dispositive motions for consideration with respect to the asserted warranty claims in this case. Any warranty language for the pertinent agreements that is included in this Order is included for purposes other than determining whether any applicable warranty has been breached or whether plaintiffs have asserted cognizable claims for relief in their first amended complaint in any claims for relief, other than the first, second and third claims for relief which are the subject of discussion in this Order.

Following transfer to this Court, motions were submitted relevant to choice of law issues. On February 12, 2007, the Magistrate Judge entered an "Order Granting Dassault Defendants Motion Regarding Choice of Law," finding that Wyoming's choice of law rules govern the issue of which state's law is applicable to the strict liability and negligence claims against the Dassault defendants in this case.

The Dassault defendants, Dassault Aviation and Dassault Falcon Jet Corp., have filed a motion for partial summary judg-ment (Document # 150/151), which asserts that the economic loss doctrine precludes plaintiffs' claims, whether brought under a strict liability theory or a negligence theory, where the only damage is to the product itself. Here, defendants contend only the product (the plane) suffered injury and that plaintiffs' claimed damages arise solely from physical damage to the product, the Compass Foods' Falcon 900 business jet.

Plaintiffs have filed a motion for summary judgment seeking judgment in plaintiffs' favor on the third claim for declaratory relief. Plaintiffs argue that the parties' purchase agreement, which it claims the agreement to provide that if Compass Foods' tort claims against Dassault USA are "bona fide" (i.e., made in good faith), the Compass Foods *can* recover "consequential or other damages arising out of the use or operation of the aircraft," including the $7.4 million cost of repairing the damage sustained when the airplane skidded off the side of the runway. Plaintiffs assert the parties' agreement effectively trumps the economic loss rule.

Plaintiffs sets out the following clause:

ALL OTHER OBLIGATIONS OR LIABILITIES OF FALCON JET CORPORATION, INCLUDING CONSEQUENTIAL OR OTHER DAMAGES ARISING OUT OF THE SALE, USE OR OPERATION OF THE AIRCRAFT, ARE EXPRESSLY EXCLUDED BY FALCON JET CORPORATION AND HEREBY WAIVED BY PURCHASER. THIS DISCLAIMER IS NOT INTENDED TO LIMIT PURCHASER'S REMEDIES RELATED TO BONA FIDE CLAIMS AGAINST SELLER FOR NEGLIGENCE OR STRICT PRODUCT LIABILITY.

Plaintiffs argue this clause provides that if Compass Foods' tort claims are "bona fide", Compass Foods can recover "conse-

quential or other damages arising out of the use or operation of the aircraft." Plaintiffs suggest that "because the parties have stipulated" that repair costs (economic losses) can be recovered by Compass Foods in a "bona fide" claim for strict product liability or negligence, the economic loss rule cannot be used to circumvent the parties' express wishes. The agreement between sophisticated business entities with equal bargaining power says that the recovery of economic losses depends on whether Compass Foods' tort claims have been made in good faith. If good faith exists, then economic losses are recoverable, regardless of the economic loss rule. Plaintiffs argue that Dassault USA's interpretation of the contract suggests that the economic loss rule overrides the parties' agreement. This strained interpretation cannot be squared with the plain language of the contract itself. If adopted by the Court, plaintiffs argue that Dassault's position would make the contract language superfluous, rob Compass Foods of the benefit of its bargain and provide Dassault with an unjustifiable windfall.

The Dassault defendants oppose the plaintiffs' motion for summary judgment on the third claim for declaratory relief.[1] Defendants reiterate the argument asserted in support of their motion to dismiss the plaintiffs' third claim (Document No. 138) addressing the economic loss doctrine. Further, plaintiffs have attempted to bring tort claims for economic losses, a right that does not exist under New Jersey law, or in Falcon Jet's Limited Warranty. The Limited Warranty was issued to Compass Foods as part of the sale of the subject aircraft. The source of the claimed right, the Limited Warranty document, unambiguously expired by its own terms no later than May 1997, almost four years before the accident. Even if the limited warranty had not expired almost ten years ago, defendants argue it conferred no right on Compass Foods at any time to bring a tort claim for economic loss. Defendants note that the "principal claim in plaintiffs' motion is that one sentence in one paragraph of a multi-page Limited Warranty (itself an exhibit to a multi-document contract) not only trumps all other contract provisions, it essentially renders most of them,

1. The Dassault defendants also filed a motion to dismiss the third claim for relief, which is the declaratory judgment claim. They argue the claim is improper, redundant to other claims, and could represent an effort to avoid the procedural and substantive defenses to Plaintiffs' other claims for damages. Plaintiffs' third claim alleges that there is a present, actual and real dispute and controversy as to the proper scope and interpretation of the purchase agreement. The claim is based on the April 14, 1992 Purchase Agreement between Compass Foods and Dassault. This alleges that the Purchase Agreement constitutes an express waiver or modification of the economic loss rule and allows plaintiffs to recover consequential or other damages in this case, including economic losses, costs of repair, and related business expenses. The Dassault defendants' motion to dismiss argues the declaratory judgment action should be dismissed, citing case law holding that such actions requesting a court to interpret a contract are improper when plaintiff alleges a breach of the contract that has already occurred. See e.g., *U.S. v. Fisher–Otis Co., Inc.,* 496 F.2d 1146, 1151 (10th Cir.1974); *Franklin Life Ins. Co. v. Johnson,* 157 F.2d 653, 657 (10th Cir.1946); *Jerome–Duncan, Inc. v. Auto–By–Tel, LLC,* 989 F.Supp. 838, 840 (E.D.Mich.1997); *Camofi Master v. College Partnership,* 452 F.Supp.2d 462, 480 (S.D.N.Y.2006); *Koch Engineering v. Monsanto Co.,* 621 F.Supp. 1204, 1206–07 (E.D.Mo. 1985). The cases hold that a declaratory judgment action requesting a court to interpret a contract is unnecessary and superfluous when there is an action for damages for breach of contract already pending. Plaintiffs' fourth, fifth, sixth and seventh claims for relief in the first amended complaint are based on the breach of the April 14, 1992 Purchase Agreement, which are subject to various defenses.

and any potentially applicable laws, meaningless. Plaintiffs' position is as legally untenable as it is commercially unreasonable." Defendant's Brief in opposition, Document No. 161 at 3.

"Contrary to the plaintiffs' myopic 'reading' of the sentence in question, Falcon Jet's Limited Warranty did not *create* a right to sue in tort for economic loss. Under New Jersey law, Compass Foods had no such tort right before the purchase of the subject aircraft, and neither the purchase agreement nor the Limited Warranty created that right." *Id.*

Defendants also assert that there are standing issues precluding certain claims by some of the plaintiffs. Plaintiff United States Aviation Underwriters, Inc., is not an insurer or an insurance company. USAIG is an unincorporated consortium of member insurance companies. The "All Clear Aircraft Policy" in effect on February 6, 2001, is attached as Exhibit 1 to the Jarosh Declaration. Member companies of the USAIG subscribing to the subject policy were: Cincinnati Insurance Company; General Accident Insurance Company of America; Hartford Fire Insurance Company; Liberty Mutual Insurance Company; Royal Indemnity Company; St. Paul Fire & Marine Insurance Company; and Zurich Insurance Company. Pursuant to Endorsement No. 3(17) of the subject policy, Compass Foods was insured. Under Endorsement No. 3(17), Compass Foods was not responsible for any deductible in the event of physical damage to the subject aircraft.

> The insurance policy provides:
> Throughout this policy the words "you" and "your" refer to Jet Aviation Business Jet, Inc. and any Insured Owner who enters into an aircraft management agreement with Jet Aviation Business Jets, Inc. "We," "our" or "us" mean the insurance companies listed on the preface of your policy which are individually and together responsible under your policy. "Aviation Managers" means United States Aviation Underwriters, Incorporated.

The policy also provides, in part:
> if we pay a claim under your policy, we will take over your right to recover that amount from any other person or organization, except Jet Aviation Business Jets, Inc. You agree to cooperate with us and not to do anything that will interfere with our chances of recovery.

Further:
> We will cover you against risk of physical loss of or damage to your aircraft as the result of an occurrence....

Document No. 161, Exhibit 1.

Defendants argue plaintiffs have no standing to bring this action because they have not met their burden of proving that they each suffered an "injury in fact." Article III standing is a jurisdictional requirement that cannot be waived. Plaintiff USAU has failed to prove it has standing. Plaintiff has summarily argued that both parties have "standing to enforce Compass Foods' contract with Dassault USA." However, the plaintiffs fail to offer any evidence to support this claim.

There is no dispute that plaintiff USAU is not an insurer and it is not one of the subscribing insurers that agreed, under the policy, to indemnify Compass Foods against loss to its aircraft. The policy also gives the subscribing insurers the contractual right to subrogate against third parties. USAU had no obligation to pay Compass Foods or anyone else for losses under the policy. That was the obligation of the subscribing insurers. USAU had admitted its "principals" suffered damage or loss, that the insurers were the "member companies of the [USAIG]" and that USAU is the manager of the USAIG. The complaint states that USAU indemnified

Compass Foods and/or Jet Aviation "on behalf of USAIG." Notwithstanding such admissions, plaintiffs claim that "Compass Foods and/or Jet Aviation assigned and pledged their respective rights and causes of action in connection with the crash to plaintiff USAU, up to the extent of the payments made by USAU". The only evidence is that Compass Foods assigned its rights to USAIG, not USAU. Thus, the member companies of USAIG, not USAU, would be subrogated to the rights of Compass Foods.

Defendants argue Compass Foods has also failed to prove it has standing. The allegations supporting the Compass Foods standing are vague: "Compass Foods and/or Jet Aviation have also suffered other losses and damages which were not included in the indemnification payments made by USAU." If the uninsured losses were incurred by Jet Aviation and not Compass Foods, then Compass Foods has no loss and no standing. There are no affidavits or evidence offered to support the standing of Compass Foods.

Even if Compass Foods has standing, the purchase agreement with Falcon Jet does not avoid the economic loss doctrine and the claims based on strict liability and negligence are barred. Falcon Jet's Limited Warranty and all of Falcon Jet's responsibilities thereunder expired no later than May 1997. Defendants argue that *Perkins v. DaimlerChrysler Corp.*, 383 N.J.Super. 99, 890 A.2d 997 (2006), provides reasoning why plaintiffs cannot pursue a contract-based claim. In *Perkins,* the plaintiff claimed that she was defrauded in violation of the New Jersey Consumer Fraud Act because her vehicle was manufactured with a tubular steel exhaust manifold allegedly susceptible to cracking and premature failing and unlikely to last the industry standard of 250,000 miles. When plaintiff sued after driving 108,000 miles, the claimed substandard part had

not yet failed and the warranty period had expired. The court affirmed dismissal of the plaintiffs' claim because the warranty period had expired.

Likewise, in *Continental Ins. v. Page Engineering Co.,* 783 P.2d 641 (Wyo.1989), the Wyoming Supreme Court rejected plaintiff's attempt to assert contractual claims for its economic loss. The Wyoming Court described plaintiff's claim that the manufacturer-seller's contractual obligations extended in perpetuity as "nonsensical" because it failed to consider other portions of the contract. The Wyoming Supreme Court found no basis to extend the warranty obligation beyond the contractually specified one-year period.

Here, defendant argues the disclaimer paragraph in the Limited Warranty merely preserved whatever tort rights Compass Foods had in the absence of that paragraph and did not create any new rights. The first sentence of the disclaimer conspicuously and properly excluded all warranties (except the limited "repair or replace" warranty) including implied warranties of merchantability and fitness for a particular purpose. The disclaimer states:

ALL OTHER OBLIGATIONS OR LIABILITIES OF FALCON JET CORPORATION, INCLUDING CONSEQUENTIAL OR OTHER DAMAGES ARISING OUT OF THE SALE, USE OR OPERATION OF THE AIRCRAFT, ARE EXPRESSLY EXCLUDED BY FALCON JET CORPORATION AND HEREBY WAIVED BY PURCHASER. THIS DISCLAIMER IS NOT INTENDED TO LIMIT PURCHASER'S REMEDIES RELATED TO BONA FIDE CLAIMS AGAINST SELLER FOR NEGLIGENCE OR STRICT PRODUCT LIABILITY.

Document No. 160, at Exhibit 2.

Considering this language in its entire contractual context, the meaning of the

disclaimer is clear and unambiguous: Compass Foods could still assert any claim in negligence and strict liability that it could have asserted in the absence of the preceding sentence. Contrary to plaintiffs' arguments, defendant argues it did not create new tort rights and did not substitute a subjective good faith standard for the legal bar of the economic loss doctrine.

Compass Foods has argued it can pursue any tort claim "made in good faith" and imply it can bring a claim as long as Compass Foods has a good faith belief in its claim. "Good faith" requires two elements to be satisfied to succeed on any tort claim: The claim must exist under applicable law and the claim must have factual merit. It is not measured subjectively, as the plaintiffs have suggested.

■ Defendant also asserts that the plaintiffs' multiple interpretations of the "bona fide claim" language violates several principles of New Jersey UCC/contract law. New Jersey principles of contract construction require a contract to be read as a whole and with common sense. It should not be interpreted to render one of the terms meaningless. "Literalism must give way to context." *Cumberland County Improvement Authority v. GSP Recycling Co., Inc.*, 358 N.J.Super. 484, 818 A.2d 431, 438 (2003). "An agreement must be construed in the context of all the circumstances under which it was entered into and must be accorded a rational meaning in keeping with the express general purpose." *Norwest Bank Minnesota v. Blair Road Associates, LP.*, 252 F.Supp.2d 86, 99 (D.N.J.2003). "Effect, if possible, will be given to all parts of the instrument and a construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable." *Id.* And, provisions of the UCC are to be interpreted in a commercially reason-able manner. *Kearney & Trecker Corp. v. Master Engraving Co.*, 107 N.J. 584, 527 A.2d 429, 432–33 (1987). Applying these standards, the plaintiffs' constructions of the "bona fide claim" language fails and render the contract meaningless and essentially rewrite the parties' agreement.

■ The purchase agreement provides in part, "Upon Buyer's execution of the delivery receipt acknowledging delivery of the aircraft, risk of loss of the Aircraft shall automatically pass to buyer." Paragraph 3 of the LIMITED WARRANTY describes Falcon Jet's limited responsibilities under the warranty:

> The responsibility of Falcon Jet Corporation under this warranty is *limited to repairing or replacing the defective item* with a new, overhauled or serviceable replacement item *during the applicable term of the warranty.* The decision to repair or replace the defective item is solely at the discretion of Falcon Jet Corporation.

Paragraph 5, entitled "Exclusion," states in part:

> This warranty does not apply to: * * * F. Damage to the Aircraft or any of its parts, accessories, appliances, components, structure or engines, which results from the failure or malfunction of a defective part (i.e., resultant or consequential damage).

Paragraph 1, makes clear that Falcon Jet's warranty obligations were limited in scope and duration:

> "Falcon Jet Corporation warrants that each new Falcon Aircraft sold by it, and the parts and accessories installed thereon ... *shall be free from defects in material and workmanship for the periods outlined below.*"

Paragraph 2, entitled "DURATION." in subparagraph B provides:

The warranty against defects in the Aircraft's non-primary structural parts, components and accessories which are manufactured by Dassault Aviation (Dassault) or its vendors, shall be for a period of five (5) years of five thousand (5,000) hours of operation after Delivery, whichever occurs first.

Document No. 160, Exhibit 2. Thus, the conclusions requested by the Dassault defendants are that the plaintiffs have failed to provide evidence of standing. Even if they had standing, their motion for summary judgment should be denied. "The purpose of the [Declaratory Judgment] Act is to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." *National Union Fire Ins. Co. of Pittsburg, PA v. ESI Ergonomic Solutions, LLC,* 342 F.Supp.2d 853, 862 (D.Ariz.2004) (internal quotation marks and citations omitted).

■ The Declaratory Judgment Act permits parties uncertain of their legal rights to seek a declaration of rights prior to injury. *Kunkel v. Continental Cas. Co.,* 866 F.2d 1269, 1274 (10th Cir.1989). Plaintiffs are not potential defendants and there is no injury to avoid because the accident giving rise to plaintiffs' claims has already occurred. Even if Compass Foods has standing, its purchase agreement with Falcon Jet does not avoid the economic loss doctrine and the claims based on strict liability and negligence are barred.

The SNECMA defendant also opposes the plaintiffs' motion for summary judgment on the third claim for relief. They submit the agreement between Dassault and the plaintiffs supports application of the economic loss doctrine and bars plaintiffs' claims in tort (negligence and strict liability).

Defendant SNECMA also filed a motion to dismiss asserting the plaintiffs' claims against SNECMA for negligence and strict liability are barred by the economic loss rules of both Wyoming and New Jersey. The opposition to the plaintiffs' motion for summary judgment incorporates and refers to the arguments presented in SNECMA's motion for dismiss and reply without repeating those arguments in opposition to the plaintiffs' motion for summary judgment.

### Standard for Motions to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted for failure to state a claim upon which relief can be granted. A dismissal under Fed.R.Civ.P. 12(b)(6) will be upheld when it appears that the plaintiffs can prove no set of facts in support of the claim(s) that would entitle them to relief, accepting all well pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff. *Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 896–897 (10th Cir.1997), citing and quoting *Yoder v. Honeywell, Inc.,* 104 F.3d 1215, 1224 (10th Cir.)(in turn quoting *Fuller v. Norton,* 86 F.3d 1016, 1020 (10th Cir.1996), cert. denied, 522 U.S. 812, 118 S.Ct. 55, 139 L.Ed.2d 19 (1997)).

### Standard of Review Fed.R.Civ.P. 56

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Allen v. Muskogee, Oklahoma,* 119 F.3d 837, 839–840 (10th Cir. 1997). A disputed fact is material if it might affect the outcome of the suit under governing law. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. The factual record and reasonable inferences therefrom are construed in the light most favorable to the nonmovant. *Id.,* quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986) and *Gullickson v. Southwest Airlines Pilots' Assoc.*, 87 F.3d 1176, 1183 (10th Cir.1996). The moving party need not affirmatively negate the nonmovant's claim in order to obtain summary judgment, but instead bears the initial burden of showing—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case. *Id.*, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265.

## Discussion

The primary issue raised in the motions presently under consideration involves application of the economic loss doctrine to the facts of the instant case. The moving defendants have argued that the economic loss doctrine precludes plaintiffs' claims seeking to recover damages for loss to the Falcon Jet 900 business jet involved in the accident in February 2001. The defendants argue that the doctrine precludes recovery of economic damages, under plaintiffs' asserted theories of recovery including strict product liability and negligence.

The plaintiffs have argued the underlying purchase agreement modifies application of the economic loss doctrine in this case and permits them to recover tort damages from all defendants, including SNECMA, a supplier of an allegedly defective component part of the aircraft, or the other defendants. Plaintiffs contend that Wyoming law would permit recovery of economic damages from a remote supplier and suggest the doctrine's application is limited to those parties or persons in privity of contract.

The Court believes that the plaintiffs' arguments are not persuasive and further finds that the economic loss doctrine precludes them from recovering tort damages in this case under theories of strict liability or negligence. Accordingly, the defendants' motions to dismiss the strict liability

and negligence claims will be granted, as well as the defendants' motions seeking partial summary judgment on the first and second claims for relief (strict liability and negligence) and their motions seeking judgment in defendants' favor on the plaintiffs' third claim for declaratory relief.

■ Neither Wyoming nor New Jersey law allow recovery in tort when the injury claimed is for injury or damage to the product itself, in this case, the Falcon Jet 900 that skidded off the runway in Pinedale, Wyoming on February 6, 2001. There is no allegation of injury to other property or persons. The plaintiffs' creative contract interpretation, arguing that the Purchase Agreement "trumps" the economic loss rule, is without support in the case law and is inconsistent with the economic loss rule as applied in Wyoming. The plaintiffs cite no persuasive authority for the contract interpretation they now urge the Court to accept in this case.

■ In New Jersey, a commercial buyer seeking damages for economic loss resulting from the purchase of claimed defective goods may recover from an immediate seller and a remote supplier in the distributive chain for breach of warranty under the Uniform Commercial Code, but cannot recover in strict liability or negligence. See e.g., *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985), which includes extensive discussion of the economic loss doctrine and reasons therefor and recognizing that economic interests traditionally have not been entitled to protection against mere negligence. See *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d at 671–672: see also *Flowers v. Viking Yacht Co.*, 366 N.J.Super. 49, 840 A.2d 291, 293–294, *citing in turn East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 859, 106 S.Ct. 2295, 90 L.Ed.2d 865, in which the United States Supreme Court stated:

... to the extent that product actions are based on negligence, they are grounded in principles already incorporated into the general maritime law. .... *Even when the harm to the product itself occurs through an abrupt, accident-like event,* the resulting loss due to repair costs, *decreased value,* and *lost profits* is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law. *Id.* at 866, 870, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (emphasis added).

Further, the New Jersey *Flowers* opinion states:

Relying on *East River,* the N.J. Supreme Court in *Alloway, supra,* 149 N.J. at 642–43, 695 A.2d 264, 275, reversed the Appellate Division and held that a consumer may not bring an action in negligence and strict liability for economic loss arising from the purchase of a defective product, but must rely on breach of warranty remedies provided by the Uniform Commercial Code.

*Flowers v. Viking Yacht Co.,* 840 A.2d at 294–295.

The Wyoming Supreme Court opinions on this issue are not substantially at variance with those of the New Jersey courts. In *Continental Ins. v. Page Engineering Co.,* 783 P.2d 641 (Wyo.1989), the Wyoming Court discussed the economic loss rule. The opinion provides in part:

The recognized majority rule is that a claim for pure economic loss (the damage is only to the defective product) does not lie on a theory of negligence or strict liability. *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); *Aloe Coal Company v. Clark Equipment Company,* 816 F.2d 110 (3d Cir.1987), *cert. denied* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987); *Hart Engineering Company v. FMC Corpo-*

*ration,* 593 F.Supp. 1471 (D.R.I.1984); *Spring Motors Distributors, Inc. v. Ford Motor Company,* 98 N.J. 555, 489 A.2d 660 (1985). See also *Buckley v. Bell,* 703 P.2d 1089 (Wyo.1985) (recognizing the majority rule). This rule is founded on solid policy justifications. The concern of tort law in the area of products liability has focused on the need to protect the purchaser or consumer, who often is not in a position to withstand the financial impact if he, or his property, is damaged by a defective product. The social need to spread the resulting, and often catastrophic, losses across a spectrum of consumers thus increasing the cost of the product is, however, substantially lessened when the injury is only to the product itself. Furthermore, this kind of loss relates essentially to the purchaser's benefit of the bargain which has been made between himself and the seller. The authorities recognize that the law of contracts is far better suited to deal with the dissatisfaction on the part of a purchaser under such circumstances.

"Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. See U.C.C. §§ 2–316, 2–719. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, cf. *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960), we see no reason to intrude into the parties' allocation of the risk." *East River,* 476 U.S. at 873, 106 S.Ct. at 2303.

In addition, we are in accord with those courts that have concluded it is

unwise to intrude, without more justification, into the remedies that legislatures have chosen and which have been provided by the adoption of Article 2 of the Uniform Commercial Code–Sales. Sections 34–21–201 through 34–21–299.5, W.S.1977. See *Sacramento Regional Transit District v. Grumman Flxible,* 204 Cal.Rptr. 736, 158 Cal.App.3d 289 (Cal.App. 3 Dist., 1984); *Clark v. International Harvester Company,* 99 Idaho 326, 581 P.2d 784 (1978).

Continental argues vigorously that this court should not espouse the majority rule, but should, instead, adopt the rationale of those courts that permit recovery of economic damages for damage to the product itself when the damage is caused by a sudden, calamitous event that creates an unreasonably dangerous condition. Those courts which have recognized a distinction between loss caused by gradual deterioration and loss caused by a sudden, catastrophic event producing an unreasonably dangerous condition generally relate the latter situation as being more akin to property than to economic damage. See *Pennsylvania Glass Sand Corporation v. Caterpillar Tractor Company,* 652 F.2d 1165 (1981); *Kodiak Electric Association, Inc. v. DeLaval Turbine, Inc.,* 694 P.2d 150 (Alaska 1984), *reh. denied* 696 P.2d 665 (1985); *Arrow Leasing Corporation v. Cummins Arizona Diesel, Inc.,* 136 Ariz. 444, 666 P.2d 544 (1983); *Roxalana Hills, Ltd. v. Masonite Corp.,* 627 F.Supp. 1194 (S.D.W.Va.1986), *aff'd* 813 F.2d 1228 (1987). The Supreme Court of the United States, in a unanimous opinion, found such a distinction not to be persuasive:

"* * * We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. [Citations]. But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to recover the benefit of its bargain—traditionally the core concern of contract law. See E. Farnsworth, Contracts Section 12.8, pp. 839–840 (1982)." *East River,* 476 U.S. at 870, 106 S.Ct. at 2301.

After the Supreme Court articulated its resolution of this issue, the United States Court of Appeals for the Third Circuit reexamined the wisdom of its decision in *Pennsylvania,* in which that court had held that tort principles could be invoked in an action seeking recovery for damage to the defective equipment when the defect resulted in a hazardous condition and the loss flowing from the defect was caused by an accident that was a sudden and catastrophic event. In that case, the court predicted that the rule ultimately adopted in *Pennsylvania* would be consistent. In *Aloe,* however, the court determined that, by applying the concepts of *East River,* "a murky trudge through sophisticated nuances gives way to an unencumbered flight to basics." *Aloe,* 816 F.2d at 119. The court then held that tort principles could not be invoked if the only damage was harm to the defective product. See also *Wisconsin Power & Light Company v. Westinghouse Electric Corp.,* 645 F.Supp. 1129 (W.D.Wis.1986). In his treatise, Professor Keeton also advises against the adoption of a rule that attempts to distinguish "accidental" damage to a product from the pure economic loss:

"Making liability depend upon whether or not the loss results from an 'accident' creates a difficult issue and arguably an irrelevant issue with re-

spect to the validity of contract provisions allocating a risk of loss for harm to the defective product itself to the purchaser. Distinguishing 'accidental' damage to the product from mere economic loss is difficult in many cases, such as defect in a component of a television set that burns out the tubes, or an electric connection to the engine of a refrigerator that destroys the engine," W. Keeton, Prosser and Keeton on the Law of Torts § 101 at 709 (5th ed.1984).

Furthermore, drawing a distinction between a sudden, calamitous event and gradual deterioration may simply turn on the arbitrary factor of whether the purchaser noticed the gradual deterioration of a component part that, left unattended, could result in a calamitous occurrence. This difficulty was noted in *S.J. Groves & Sons Company v. Aerospatiale Helicopter Corporation,* 374 N.W.2d 431 (Minn.1985).

We have no quarrel with Continental's contention that there may be no incentive for manufacturers to produce safer products unless they are held liable for those defective products placed in the hands of purchasers and consumers. We are satisfied, as other courts have been, that rules which permit recovery in negligence and strict liability for damage to property other than the product itself or for personal injury adequately serve this social function. See *Ogle v. Caterpillar Tractor Company,* 716 P.2d 334 (Wyo.1986); *O'Donnell v. City of Casper,* 696 P.2d 1278 (Wyo.1985); *Caterpillar Tractor Co. v. Donahue,* 674 P.2d 1276 (Wyo.1983). We are in accord with those courts that have rejected the distinction between circumstances which demonstrate damage to the product itself caused by a calamitous event and the same economic loss due to gradual deterioration.

We therefore hold that Wyoming does not permit recovery in strict liability or negligence for damage caused to the product itself. The corollary of this rule in context of summary judgment is that, where no cause of action is permitted, there obviously are no material facts. In the context of discovery, if there are no facts which are material, no purpose can be served by further discovery. *Continental Ins. Co. v. Page Engineering Co.,* 783 P.2d at 647–649.

The opinion in *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.,* 929 P.2d 1228 (Wyo.1996), also speaks to the economic loss doctrine. In *Rissler,* the Wyoming Supreme Court stated:

We now turn to Rissler's tort claims against HKM. The district court granted HKM's motion for summary judgment on the claims of negligence and negligent misrepresentation ruling that these claims fail under the "economic loss doctrine" and because HKM's duty to Rissler, if any, arose from contract. Rissler contends the district court's conclusion is in error because HKM's duty arises pursuant to Restatement of Torts (Second) § 552 (1977), which allows recovery of purely economic losses.

Restatement of Torts (Second), *supra,* § 552 has been recognized by this court as a viable basis for a claim. *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.,* 907 P.2d 1293, 1299 (Wyo.1995); *Duffy v. Brown,* 708 P.2d 433, 437 (Wyo. 1985). In order to present a claim for negligent misrepresentation against HKM, Rissler must show

"[f]alse information supplied in the course of one's business for the guidance of others in their business, failure to exercise reasonable care in obtaining or relating the information, and pecuniary loss resulting from jus-

tifiable reliance thereon. Restatement of Torts (Second) § 552, p. 126 (1977)."

*Verschoor,* 907 P.2d at 1299 *(quoting Duffy,* 708 P.2d at 437). However, none of our previous decisions required consideration of the "economic loss rule" as applied to a claim under Restatement of Torts (Second), *supra,* § 552.

The "economic loss rule" bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property. [FN1—set out in note 1 below.] [2] The purpose of the "economic loss rule" is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles. As the court noted in *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55, 58 (1988):

> The controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other. The "economic loss rule" is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." *South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp.,* 826 F.Supp. 1549, 1557 (D.S.C.1993). In this case, Rissler did not contract with HKM for the design of the Project and therefore had no opportunity to negotiate directly with HKM regarding the limits of its liability. However, Rissler had the opportunity to allocate the risks associated with the costs of the work when it contracted with the Board and, in fact, entered into a detailed contract which allowed it the means, method and opportunity to recover economic losses allegedly caused by HKM's negligence.

Considering nearly identical facts to those before us, the court in *Berschauer/Phillips Const. Co. v. Seattle School Dist. No. 1,* 124 Wash.2d 816, 881 P.2d 986, 992 (1994) reasoned that a bright line distinction between the remedies offered in contract and tort with respect to economic damages encourages the parties to negotiate toward the risk distribution that is desired or customary. In deference to the abilities of sophisticated businessmen to provide contractual remedies in their business dealings, that court held that the contractor's claims against the architect must fail under the economic loss doctrine. *Id.* 881 P.2d at 993. We agree.

**2.** FN1. This court has adopted the "economic loss rule" in products liability based on negligence and strict liability theories. *Schneider Nat., Inc. v. Holland Hitch Co.,* 843 P.2d 561, 586 (Wyo.1992); *Continental Ins. v. Page Engineering Co.,* 783 P.2d 641, 647 (Wyo.1989); *Buckley v. Bell,* 703 P.2d 1089, 1095 (Wyo. 1985); *Cline v. Sawyer,* 600 P.2d 725, 732 (Wyo.1979). We have also applied the "economic loss doctrine" where an employer sued a third party in negligence for the loss of his employee's services. *Champion Well Service, Inc. v. NL Industries,* 769 P.2d 382 (Wyo. 1989). In *JBC of Wyoming Corp. v. City of Cheyenne,* 843 P.2d 1190, 1197 (Wyo.1992), we noted our precedent regarding economic loss and held that tort liability can only be premised on a duty independent of contractual duties. However, contrary to HKM's assertion, we have declined to apply the "economic loss rule" to all tort claims alleging pecuniary harm in the absence of physical harm. *Century Ready–Mix Co.,* 816 P.2d at 801.

We have consistently noted the importance of the parties' right to negotiate the terms of a contract, limited only by statutory prohibitions or public policy. *Commercial Union Ins. Co. v. Stamper,* 732 P.2d 534, 538 (Wyo.1987) (and cites therein); *Allstate Ins. Co. v. Wyoming Ins. Dept.,* 672 P.2d 810, 815 (Wyo.1983); *Mountain Fuel Supply Co. v. Emerson,* 578 P.2d 1351 (Wyo.1978). Just as firm has been our recognition that the parties to a contract must comply with the terms of their agreement. *Bouwkamp v. McNeill,* 902 P.2d 725, 727 (Wyo. 1995); *Pete Lien & Sons, Inc. v. Ellsworth Peck Const. Co.,* 896 P.2d 761, 763 (Wyo.1995); *JBC of Wyoming Corp. v. City of Cheyenne,* 843 P.2d 1190, 1197 (Wyo.1992); *Westates Const. Co.,* 775 P.2d at 504. While we acknowledge that there may be circumstances under which purely economic damages may be a basis for an action under Restatement of Torts (Second), *supra,* § 552, we will not allow Section 552 to be used as a method to sidestep contractual duties or to provide a scapegoat for self-inflicted damages. Therefore, we hold that when the plaintiff has contracted to protect against economic liability caused by the negligence of the defendant, there is no claim under Restatement of Torts (Second), *supra,* § 552 for purely economic loss. We believe that this ruling not only encourages the parties to negotiate the limits of liability in a contractual situation, but it holds the parties to the terms of their agreement. The decision of the district court to grant summary judgment in favor of HKM is affirmed. *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.,* 929 P.2d 1228, 1234–1235 (Wyo.1996). It is significant to this Court that *Rissler* was not a product liability case and the Wyoming Court found the opportunity to allocate risk an important factor to consider in that case.

It is apparent to this Court, although it has not been not briefed extensively by the parties and it is only incidental to the conclusion reached by the Court in this case, the risk was allocated by agreement of the parties in various warranty provisions in the purchase agreement, as well as by obtaining insurance to provide coverage for this aircraft. The insurance was maintained over a period of years, and presumably, was intended to provide coverage for events such as that which occurred on February 2001 and in which the Compass Foods' Falcon Jet 900 was damaged, necessitating the extensive and costly repairs.

■■ The Court is not persuaded by plaintiffs' arguments that the economic loss rule was abrogated or modified by the Limited Warranty provisions in the underlying purchase agreement. The various warranty provisions of the purchase agreement were limited in time and scope and did not provide a perpetual warranty as the plaintiffs have seemed to suggest. The Court is not persuaded by arguments that the economic loss rule, as applied in Wyoming, would allow the plaintiffs to recover their claimed tort damages from a remote supplier of a defective component part, such as SNECMA or another with whom there is no specific contractual relationship. As the rule is applied in Wyoming, privity in contract is not required, as is made clear by the extensive discussion set out above from *Rissler.* See also *Grynberg v. Questar Pipeline Co.,* 70 P.3d 1, 16 (Utah 2003) ("The economic loss doctrine bars any tort claims that were barred before the Hunt Contracts. Wyoming does not require privity as a prerequisite to application of the economic loss doctrine, particularly when the parties are sophisticated businessmen involved in commercial dealings.")

Plaintiffs have argued unconvincingly that the economic loss doctrine, as outlined in *Continental Insurance v. Page Engineering Co.*, 783 P.2d 641 (Wyo.1989), would not be followed today. Plaintiffs suggest that the "modern trend" of authority, as exemplified by decisions they cite from other jurisdictions [3] that are claimed to be representative of that modern trend, would likely be embraced by the Wyoming Court today. This Court disagrees and does not believe that Wyoming Court is likely to reject its prior precedent in the wholesale fashion advocated by plaintiffs. Based upon the foregoing discussion, the Court finds that the defendants' motions seeking summary judgment in their favor on the plaintiffs' strict liability and negligence claims should be granted, for the reason that the economic loss doctrine as applied in Wyoming would preclude plaintiffs from recovering purely economic damages in this case.

The Court rejects plaintiffs' arguments that the contracting parties "stipulated" Compass Foods could recover consequential or other damages arising out of the use or operation of the aircraft if those claims are "bona fide" tort claims. The plaintiffs' argument would permit them to pursue "bona fide" tort claims, merely if there was a good faith, subjective belief in the validity of the claim. The disclaimer in parties' agreement does not limit the purchaser's remedies for "bona fide" claims against the seller for negligence or strict liability that would exist and could be brought in good faith under applicable state law. As defendants' counsel noted at the hearing, if the accident had occurred and property other than the aircraft had been injured or destroyed, or a person had been seriously injured, that would be a situation in which a bona fide claim for strict liability or negligence might be appropriate and clearly could have been pursued under state law. The language was not included, in the Court's view, to give plaintiffs *a carte blanche* opportunity to bring a claim in tort against the seller of the aircraft that would be barred by application of the economic loss doctrine. The language of the agreement preserved the right to pursue claims that would otherwise exist under state law; it did not create a right to pursue a claim that would not otherwise exist and would be barred by the economic loss doctrine.

The Court also finds that the motion seeking summary judgment on the plaintiffs' third claim for relief should also be granted. The Dassault defendants have argued that the declaratory judgment claim should not be permitted to proceed when there is a pending breach of warranty claim. The defendants argue the claim is improper, redundant to other claims, and could represent an effort to avoid the procedural and substantive defenses to plaintiffs' other claims for damages. Plaintiffs' third claim for relief alleges that there is a present, actual and real dispute and controversy as to the proper scope and interpretation of the purchase agreement. The claim is based on the April 14, 1992 Purchase Agreement between Compass Foods and Dassault. The third claim for relief alleges that the Purchase Agreement constitutes an express waiver or modification of the economic loss rule and allows plaintiffs to recover consequential or other damages in this case, including economic losses, costs of repair, and related business expenses. These arguments have, as dis-

---

**3.** Plaintiffs cite, by way of example, *Town of Alma v. Azco Construction, Inc.*, 10 P.3d 1256 (Colo.2000) (adopting a duty analysis in determining whether the economic loss rule should be applied); *Hermansen v. Tasulis*, 48 P.3d 235 (Utah 2002), and *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1 (Utah 2003) (applying Wyoming law).

cussed in the foregoing portions of this Order, been rejected by this Court.

The Dassault defendants' motion to dismiss argues the declaratory judgment claim for relief should be dismissed, citing case law holding that such actions requesting a court to interpret a contract are improper when plaintiff alleges a breach of the contract that has already occurred. See e.g., *U.S. v. Fisher–Otis Co., Inc.*, 496 F.2d 1146, 1151 (10th Cir. 1974); *Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 657 (10th Cir.1946); *Jerome–Duncan, Inc. v. Auto–By–Tel, LLC*, 989 F.Supp. 838, 840 (E.D.Mich.1997); *Camofi Master v. College Partnership*, 452 F.Supp.2d 462, 480 (S.D.N.Y.2006); *Koch Engineering v. Monsanto Co.*, 621 F.Supp. 1204, 1206–07 (E.D.Mo.1985). Defendants cite these cases for the proposition that a declaratory judgment action requesting a court to interpret a contract is unnecessary and superfluous when there is an action for damages for breach of contract already pending. Plaintiffs' fourth, fifth, sixth and seventh claims for relief in the first amended complaint are based on the breach of the April 14, 1992 Purchase Agreement, which are or may be subject to various defenses.

In *United States v. Fisher–Otis Co., Inc.*, 496 F.2d 1146, 1150–1151 (10th Cir. 1974), the circuit court offered the following discussion with respect to the Declaratory Judgment Act. In footnote 6, the court stated:

> ... The Declaratory Judgment Act, 28 U.S.C. § 2201, limits declaratory judgments to 'cases of actual controversy' in recognition of the fact that Federal judicial power extends, under Article III, Section 2 of the Constitution, only to 'cases' or 'controversies.'

The circuit court continued:

> Defendants misconstrue the requirement that a proceeding for declaratory judgment be based upon an actual controversy. The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action. *Johnson v. Interstate Transit Lines*, 163 F.2d 125 (10th Cir.1947). The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or a breach of duty. *Scott–Burr Stores Corp. v. Wilcox*, 194 F.2d 989 (5th Cir.1952). It is not necessary for the maintenance of this action, therefore, for plaintiff to have proven that defendants placed landfill or structures within the flowage easement area in the past. The test for determining whether or not there is an actual controversy contemplated by the Declaratory Judgment Act is the familiar one stated in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829 (1941): 'Basically, the question in each case is whether * * * there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' *Accord, Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959–960, 22 L.Ed.2d 113, 118 (1969); *Lake Carriers' Assoc. v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257, 266 (1972). Such a controversy is presented in this case. The complaint alleges not only that defendants have placed earth fill within the flowage easement area in the past, but it also alleges that defendants presently contend that such raising of the surface elevation removes that portion of the land from the flowage easement, and that structures for human habitation can be constructed on such filled land. The record and the briefs filed in this court substantiate that defendants assert a

present claim of right to landfill within the flowage easement area, which plaintiff contends is in direct violation of the conditions and general intent and purpose of the easement deed. The facts herein alleged, under all the circumstances, establish the existence of a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *United States v. Fisher–Otis Co., Inc.,* 496 F.2d 1146, 1150–1151 (10th Cir.1974).

The cases cited by defendants in support of their argument that this Court cannot consider the plaintiffs' declaratory judgment claim because they have also asserted claims for breach of contract and breach of warranty are not dispositive in the Court's view. In the cases cited, for the most part, the issues being considered by those courts concerned conflicting jurisdiction and comity considerations between state and federal courts. However, this Court does agree with the United States District Court for the District of Missouri that the purpose of the Declaratory Judgment Act is to provide a remedy to minimize danger of avoidable loss and unnecessary damages and afford early adjudication to one threatened with liability. See e.g., *Koch Engineering Co., Inc. v. Monsanto Co.,* 621 F.Supp. 1204 (D.Mo. 1985). This case is not, however, that type of case.

■ In this case, the damages sought have already been sustained. The accident and resulting economic loss claimed by plaintiffs have already occurred. The claims asserted by plaintiffs against the defendants seek to recover for those losses; they do not seek to avoid threats of future liability or otherwise avoidable losses and unnecessary damages. Thus, for this reason, the Court agrees that the plaintiffs' third claim for relief seeking a declaratory judgment in this matter does not withstand serious scrutiny and summary judgment should be granted in favor of the defendants on that claim. See also *Kunkel v. Continental Cas. Co.* 866 F.2d 1269 (10th Cir.1989) (discusses Declaratory Judgment Act and remedy at length).

As noted as well in 10 Federal Practice and Procedure, Lawyers Ed., § 23:2, the purpose of the declaratory judgment remedy is pragmatic. "The Declaratory Judgment Act contemplates a pragmatic approach to the determination of legal relations and controversy between interested parties. It enables parties uncertain of their legal rights to seek a declaration of right prior to injury." Further, "[i]t was the congressional intent to avoid the accrual of avoidable damages to a party not certain of its rights by affording that party an early adjudication without waiting until that party's adversary should see fit to begin suit, after the damage had accrued." The instant case is not one in which the declaratory judgment remedy is appropriate, in this Court's view.

For the reasons stated above, the Court agrees that defendants are entitled to summary judgment on plaintiffs' third claim for relief (declaratory judgment). The damages have already accrued; the claim as styled by plaintiffs in this case seeks to address their breach of contract/warranty claims in a declaratory judgment context, which is, in this Court's view, not appropriate. The Court finds that defendants are entitled to summary judgment in their favor as a matter of law on plaintiffs' third claim for relief seeking a declaratory judgment.

The Court further finds that defendants are entitled to summary judgment in their favor on plaintiffs' causes of action based upon strict liability and negligence, for the reason that such claims are barred by the economic loss doctrine. It is therefore

ORDERED that Defendant SNECMA's Motion to Dismiss shall be, and is, **GRANTED. It is further**

ORDERED that Defendants Dassault Aviation and Dassault Falcon Jet Corp.'s Motion for Partial Summary Judgment shall be, and is, **GRANTED. It is further**

ORDERED that Defendants Dassault Aviation and Dassault Falcon Jet Corp.'s Motion to Dismiss the Third Claim for Relief in Plaintiffs' First Amended Complaint shall be, and is, **GRANTED. It is further**

ORDERED that Plaintiffs' Motion for Summary Judgment on Third Claim for Declaratory Relief shall be, and is, **DENIED. It is further**

ORDERED that Plaintiffs' First (strict product liability), Second (negligence), and Third (declaratory judgment) Claims for Relief shall be, and are, **DISMISSED.**